STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: | } | |
| Judge Development Corp. and SW Corner, LLC | } | Docket No. 189-9-05 Vtec |
| Act 250 Permit Amendment Application | } | |
|  | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants (Appellants) Judge Development Corp. and SW Corner, LLC, appealed from a decision of the District 4 Environmental Commission denying Appellants' application for an Act 250 permit amendment to move the so-called Blair House from the corner of U.S. Route 2 and Vermont Route 2A to a location on the same lot but farther to the west on Route 2A. Appellants are represented by Erik M. Knudsen, Esq. and Erin Miller Heins, Esq.; the Vermont Division for Historic Preservation (the Division) of the Agency of Commerce and Community Development, Department of Housing and Community Affairs, is represented by Julie Kelliher, Esq. and John Kessler, Esq.; the Town of Williston is represented by Paul S. Gillies, Esq. and Daniel Richardson, Esq.; and the Land Use Panel of the Vermont Natural Resources Board has intervened and is represented by John H. Hasen, Esq.

Appellants, the Town and the Division for Historic Preservation have each moved for summary judgment. The Land Use Panel of the Natural Resources Board filed a memorandum of law limited to the interpretation and application of Environmental Board Rule 34(E). The following facts are undisputed unless otherwise noted.

The Blair House, a mid-19th century historic building also known as the Calvin Morse Tavern, is located on the southwesterly corner of the intersection of U.S. Route 2

1

(Williston Road) and Vermont Route 2A, also known as the Taft Corners[1] intersection. Taft Corners was an important crossroads[2] in Williston on the stagecoach route linking Burlington with Montpelier. The 1976 structure survey form for the Blair House conducted by the Division for Historic Preservation states some uncertainty as to whether the Blair House 1845 structure itself was the original tavern or whether it is merely located on the site of the original tavern, but in any event describes it as "an important visual anchor for Tafts Corners." It was used as a tavern, an inn and stagecoach stop.

Because of its historical significance, the Blair House was listed[3] on the State Register of Historic Sites and Structures by 1985; and was then considered by the state Advisory Council on Historic Preservation to be eligible for inclusion on the National Register of Historic Places. In its review regarding the National Register, the Advisory Council chair noted that "the building acts as a gateway to the Burlington area and that it is important as a remnant of the heavily-edited rural crossroads environment of Tafts Corners," and that it "identifies the historic intersection and is the last identifiable historic link" at that intersection.

Both Route 2 and Route 2A have been widened to four lanes to the west and the south of the intersection, in connection with the commercial development of the Taft

---

[1] The intersection also is referred to as Tafts Corners.

[2] The application letter submitted for the present application states "as an aside" that the current single intersection "has been modified from two intersections." In the conference scheduled as a result of this decision, the parties should be prepared to discuss the historic configuration of Taft Corners and the extent to which any changes in its configuration over time may or may not have a bearing on this application.

[3] Material facts are in dispute, or at least have not been provided to the Court, regarding the Advisory Council's action listing the building on the Vermont Register. It appears from later references by the Division that it was not listed due to its "setting," which had already been compromised, but due to its "location" at the Taft Corners intersection.

Corners area since the building was first surveyed. The traveled way of Route 2 occupies all of the width of the right-of-way at the intersection, as a right-turn-only lane has been added to Route 2 eastbound in front of the Blair House.

As now developed, a gasoline station is located on the northwest corner of the Taft Corners intersection, a small shopping center is located on the northeast corner of the intersection, and a franchise restaurant is located on the southeast corner. Two now-existing buildings[4] are located on the same lot as and southwesterly of the Blair House building; the extensive parking lot for these buildings also provides parking for the Blair House.

The Blair House is visible to traffic traveling in both directions from the roadway of Route 2, and approaching it from the north on Route 2A. However, the large deciduous trees that have grown up around it to its east and southeast block its visibility approaching it on Route 2A from the south, especially when leaves are on the trees. Its visibility to motorists and pedestrians using the Taft Corners area is relevant to the degree to which it may continue to help define and convey cultural or historical meaning about the intersection to the public; material facts are in dispute as to this issue.

In July of 1985, Appellants' predecessors-in-interest applied for an Act 250 land use permit amendment to relocate the Blair House and its outbuildings to Lot 5 of the Blair Park development. The purpose of that amendment may have been to allow a

---

[4] The parties have not described the size or use of the two "existing buildings" shown on the partial site plan provided in reduced format with the application, nor have they shown the access to the former or proposed Blair House locations from Route 2 or Route 2A. A site plan attached to a 1999 proposal by the Vermont Agency of Transportation for improvements at the intersection showed that, at least in 1999, Lot 29 contained a single commercial or office building, labeled as "Interstate Corporate Center" with a curb cut from Route 2A close to the lot's southerly boundary and apparently shared with the adjacent Howard Bank lot, and another curb cut from Route 2.

3

simultaneous or later application[5] for construction of the two buildings now on Lot 29. Materials have not been provided to the Court to show what the then-existing conditions were on Lot 29 or on the roadways at the intersection. The 1985 application to move the Blair House from Lot 29 to Lot 5 (then proposed to be developed as a residential lot) has not been provided to the Court.

On August 9, 1985, the participants in that Act 250 proceeding, including the Division for Historic Preservation, entered into an agreement (the 1985 Stipulation) allowing the applicants to move all of the outbuildings associated with the Blair House to Lot 5, which was proposed for a residential use. Condition 8 of the 1985 Stipulation required them to "preserve and maintain and rehabilitate" the main Blair House structure "according to generally accepted preservation standards as approved by the Division of Historic Preservation, State of Vermont." Conditions 1 and 2 of the Stipulation recognized that the Blair House was listed on the Vermont Register, that it was eligible for inclusion on the National Register, and that "the goal of the Vermont Division [for] Historic Preservation is to preserve intact and in place the main block (approximately 32′ x 40′) of the Blair House with all its historic features . . . ." The stipulation allowed the removal of certain listed fixtures and appliances from inside the house, and allowed the removal of an apartment and exit stairs attached to the house, and allowed the removal of any of the detached outbuildings on the parcel, but required in Condition 3 that the removals be accomplished without otherwise affecting the structure of the main block of the Blair House.

Based at least in part on the 1985 Stipulation, on August 29, 1985, the District Commission issued its Findings of Fact and Conclusions of Law and Order issuing Land

---

[5] Materials have not been provided to the Court to establish whether the application for the two office buildings now on Lot 29 (shown as "existing building(s)" on the portion of the site plan accompanying the present proposal to move the Blair House) contained any conditions relating to preservation of, access to, use of or signage for the Blair House.

4

Use Permit Amendment #4C0388-A-12 (the 1985 Permit Amendment). Condition 15 of the 1985 Permit Amendment specifically incorporated the provisions of the 1985 Stipulation. However, the parties have not provided the Court with any of the exhibits incorporated by reference in the Commission's findings or in the 1985 Permit Amendment, which requires the project to be "completed in accordance with the plans and exhibits stamped 'Approved,'" as well as in accordance with the permit conditions. In particular, the Court has not had the opportunity to review Exhibit 20 or Exhibit 12 submitted in the proceeding, which are referred to in Finding 8 as supporting the conclusion that "[t]herefore, the building should be preserved <u>at its present location</u>." (Emphasis added.) Finding 8, supporting the District Commission's approval of the 1985 Permit Amendment with regard to Criterion 8 (10 V.S.A. §6086(a)(8)) as it relates to the project's effect on historic sites, found that "a great deal of the significance of this building is related to its location at this crossroad;" and that the building's "historic relationship to its site [is] important."

Thereafter, Appellants or their predecessors relocated or removed the Blair House's outbuildings, apartment, and exterior stairway, leaving the main structure of the Blair House intact in its original location. In connection with its maintenance, preservation, and restoration, they installed new windows and performed other restoration work on the Blair House structure in 1989. The parties have not provided the Court with information as to the timing of this work in relation to the construction of the two buildings now on Lot 29, or their associated access drives and parking lots.

In 1999, the Vermont Agency of Transportation evaluated proposed improvements to the Taft Corners intersection, involving only the installation of a new traffic signal and the reconfiguration of the intersection with the addition of two traffic islands. In connection with this proposal, the Historic Preservation Specialist for the Agency of Transportation determined that the "historic context for the building has been almost

5

completely destroyed," but that "the setting of the [Blair House] does not contribute[6] to its historic significance because it has already been compromised." He concluded, and the representative of the Division for Historic Preservation concurred, that the traffic signals and traffic islands proposed for the intersection would not further affect the historic building.

In the application on appeal in the present case, on May 27, 2005, Appellants applied to further amend the permit to allow them to move the Blair House within Lot 29 from its current location to a location near the westerly boundary of Lot 29, oriented facing Route 2, but set farther back from the roadway, at the end of the most westerly parking lot on Lot 29. The building's original foundation, which is brick with a concrete facing as shown on the 1976 historic structure survey form for the building, is permeable to moisture. The other parties do not contest Appellants' affidavit that, due to the fact that the structure's walls are thin,[7] the structure has a moisture[8] problem, which has caused the building's paint[9] to peel and its sills[10] to rot. Appellants propose to pour a new concrete foundation for the building in the new location, to replace the windows and sills installed in 1989, and to remove the so-called summer kitchen. Appellants propose that the building would be more visible in its proposed location and that, with appropriate landscaping and signage,

---

[6] See footnote 3, above.

[7] The materials provided to the Court do not show whether the reference to the "thinness" of the walls is meant to suggest that they are uninsulated.

[8] The materials provided to the Court do not show whether this is a problem of interior moisture condensing within the building on the surfaces of the walls.

[9] The materials provided to the Court do not show whether this refers to the building's exterior or interior paint.

[10] The materials provided to the Court do not show whether this refers to the sills of the building itself or to its windowsills, as the application proposes to replace both the building's foundation and also its windows.

it could be used for a commercial or tourist-oriented purpose. Appellants have not proposed any particular landscaping, signage or other interpretive material, or any particular use open to or closed to the public at the new location. Appellants have not shown whether the repairs to the foundation could technically be accomplished at the original location, whether any other technical solution to the moisture problem exists, or whether they have considered moving the building to another location on Lot 29 less distant from the original location than now proposed. The materials filed with the Court do not show what the proposed access would be to the Blair House main its proposed relocated position.

In this de novo appeal of a District Commission decision, we apply "the substantive standards that were applicable in the tribunal appealed from." 10 V.S.A. §8504(h)

Environmental Board Rule (EBR) 34(E) is entitled "Stowe Club Highlands Analysis," as it provides the standards called for by the Vermont Supreme Court to guide the then-Environmental Board in evaluating applications for permit amendments. In re Stowe Club Highlands, 166 Vt. 33, 37 (1996). By its terms it applies only to applications to amend permit conditions "which were included to resolve issues critical to the district commission's or the board's issuance of prior permit(s) pursuant to the criteria of 10 V.S.A. Section 6086(a)." EBR 34(E)(1). Thus, the first step in analyzing a permit amendment application is to determine whether the contested permit conditions were included to resolve issues critical to the grant of any prior Act 250 permit.

Appellants first argue that they are planning to "preserve and maintain" the Blair House on the same lot as the original approval, albeit at a different location on that lot, and therefore in order to relocate it they need not apply to amend any permit conditions. However, reading the 1985 Permit Amendment together with the 1985 Stipulation and the 1985 Findings of Fact and Conclusions of Law, it is clear that leaving the main block of the

7

Blair House in its original location was critical to allowing the remainder of it (and its outbuildings) to be removed. Therefore, Appellants' 2005 application to relocate the Blair House must be evaluated under the remainder of EBR 34(E).

The task under EBR 34(E)(2) is first to determine "whether the permittee is merely seeking to relitigate the permit condition or to undermine its purpose and intent," and then to determine "whether the need for flexibility arising from changes or policy considerations outweighs the need for finality in the permitting process." That is, as the Supreme Court stated in In re Stowe Club Highlands, 166 Vt. at 38, "[i]f the existing permit conditions are no longer the most useful or cost-effective way to lessen the impact of development, the permitting process should be flexible enough to respond to the changed conditions."

In performing this latter balancing task, EBR 34(E)(3) suggests that the Court should consider, among other factors, whether there have been changes in facts, law or regulations beyond the permittee's control; whether there have been changes in technology, construction, or operations which drive the need for the amended permit condition; whether other factors including innovative or alternative design provide a more efficient or effective means to mitigate the impact addressed by the original permit condition; whether other important policy considerations are met, including the proposed amendment's furtherance of the goals and objectives of the duly adopted municipal plan; whether there was "manifest error" on the part of the district commission or the board in the issuance of the original permit condition; and the degree to which the issuing authority or other parties have relied on the original permit condition or on material representations of the applicant made in the prior permit proceedings.

Appellants certainly wish to change the permit condition requiring the Blair House to remain at its original location, but they are not merely seeking to relitigate or undermine that condition based on the information that existed in 1985. Rather, they suggest that the conditions at Taft Corners have changed sufficiently since 1985 to warrant a new look at

8

that permit condition. Nothing in EBR 34(E) precludes the Court's consideration of the application, rather, it creates a presumption of finality that can be overcome by evidence showing the changed circumstances or other considerations warranting revisiting the permit condition on its merits.

However, as described above, material facts are in dispute as to the changed circumstances and the alternatives available to the parties for addressing those changed circumstances, making an evidentiary hearing necessary in order to balance flexibility and finality, applying the standards in EBR 34(E)(3).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' motion for summary judgment is DENIED in PART and Summary Judgment is GRANTED to the Town and the Division in that EBR 34(E) is applicable to this analysis and that, under EBR 34(E)(1), the requirement that the Blair House remain in its original location was included in the 1985 Permit to resolve a critical issue. Appellants' motion for summary judgment is GRANTED in PART, in that, under EBR 34(E)(2), they are not merely seeking to relitigate or undermine the requirement that the Blair House remain in its original location. All three Motions for Summary Judgment are DENIED with regard to whether finality outweighs flexibility in this particular case, as material facts are in dispute as to the factors the Court must consider under EBR 34(E)(3). We will hold a telephone conference on August 14, 2006 (see enclosed notice) to discuss the scheduling of the evidentiary hearing, and whether mediation among the parties may be useful at this point in the proceedings.

Done at Berlin, Vermont, this 7th day of August, 2006.

_____
Merideth Wright
Environmental Judge

9